CLARK'S PORK FARMS, Donald R. Clark, Virginia Clark, and Gene Clark, Appellants (Defendants),

v.

SAND LIVESTOCK SYSTEMS, INC., Appellee (Plaintiff).

No. 06A01–8906–CV–201.

Court of Appeals of Indiana, First District.

Dec. 10, 1990.

Norman P. Rowe, Joseph H. Yeager, Jr., Baker & Daniels, Indianapolis, Paul S. Kruse, Parr, Richey, Obremskey, & Morton, Lebanon, for appellants.

Michael R. Fruehwald, Alan K. Mills, Barnes & Thornburg, Indianapolis, Thomas A. Whitsitt, Peyton, Giddings, Whitsitt, Baker & McClure, Lebanon, for appellee.

SHIELDS, Presiding Judge.

## STATEMENT OF THE CASE

Clark's Pork Farms (CPF), Donald R. Clark (Don), Virginia Clark (Virginia), and Gene Clark (Gene) appeal the Boone Circuit Court's judgment in favor of Sand Livestock Systems, Inc. (Sand) in Sand's action to foreclose a mechanic's lien against real estate owned by Don and Virginia, and its judgment in favor of Gene in his counterclaim against Sand for breach of contract. We affirm in part, reverse in part and remand to the trial court for further proceedings.

## ISSUES

Restated, the issues presented for our review are as follows:

1. Whether the trial court erred in awarding $251,082.00 in contract damages to Gene, representing lost profits, defects in workmanship, and other miscellaneous damages.

2. Whether the trial court erred in foreclosing Sand's mechanic's lien because damages resulting from defects in the buildings exceeded any amount due under the contract.

3. Whether the trial court's judgment foreclosing Sand's mechanic's lien is invalid due to an inadequate description of the subject property.

4. Whether the trial court erred in awarding Sand $84,204.00 in attorney fees.

5. Whether the trial court erred in awarding Sand prejudgment interest on the contract balance.

## FACTS

Gene and his father Don have operated CPF on property owned by Gene's parents, Don and Virginia, since 1980. In 1986, Don and Gene decided to expand their operation and contacted Sand, a designer and builder of hog confinement systems. It was

agreed Sand would design and build new buildings for the farrowing, nursery, and grower stages of a farrow-to-finish hog production operation. CPF's existing buildings were to serve as the finishing area. Don and Gene decided that Gene alone would sign the contract with Sand, thus enabling Gene to secure a low interest loan for young farmers. Prior to signing the contract, Gene told Sand's representative, Rudy Bell, that he wanted the new buildings to house an operation capable of bringing to market 180 pigs per week. Bell told Gene that Sand's proposed design, with a contract price of $364,029.00, was large enough to handle that amount. Gene signed the contract on July 26, 1986.

Construction began in August of 1986 and continued through February of 1987. Don and Gene were concerned the finished project was seriously defective; therefore, the last payment due Sand on the contract, approximately $80,000.00, was withheld. Sand sent a letter to Don on March 2, 1987 demanding payment for the project, which went unheeded.

On October 3, 1987 Sand filed suit, seeking contract damages from Gene, foreclosure of a mechanic's lien on the real property owned by Don and Virginia, and damages under quantum meruit against all the Clarks and CPF.[1] On December 31, 1987 the Clarks filed their answer and Gene filed a counterclaim asserting Sand had breached the contract. After a trial before the court, the trial court awarded Sand its contract balance of $80,568.00, attorney's fees of $84,204.50, and prejudgment interest of $10,636.00. The trial court also awarded the Clarks $251,082.00 on Gene's counterclaim which it setoff against Sand's judgment. Thus, after the setoff, the Clarks' net award was $75,674.00.

Don and Virginia and Sand filed motions to correct errors. Don and Virginia challenged the trial court's award of attorney's fees and interest and its denial of the cost of some repairs. Sand challenged several

factual findings which supported the damage award, and asserted a setoff was improper because Gene and Sand were the only contracting parties. In response to the cross motions, the court modified its order as follows:

A. Judgment on the original Complaint is HEREBY AMENDED and MODIFIED in favor of Plaintiff Sand Livestock Systems, Inc., foreclosing the Plaintiff's mechanic's lien against the property of Donald Clark and Virginia Clark (as described in Plaintiff's Exhibit 1 at trial) in the sum of One Hundred Seventy Five Thousand Four Hundred Eight Dollars ($175,408.00); representing $80,568.00 owed on the contract balance by Gene Clark, $84,204.00 attorney fees, and $10,636.00 interest;

B. Judgment on the Counterclaim is HEREBY AMENDED AND MODIFIED in favor of Counterclaim Plaintiff/Defendant, Gene Clark, and against Counterclaim Defendants/Plaintiff, Sand Livestock Systems, Inc., in the sum of Two Hundred Fifty One Thousand Eighty Two Dollars ($251,082.00);

C. The Findings and Conclusions, where necessary, are hereby ORDERED to be modified and amended to be consistent with the rulings herein;

Record at 473–74.

On February 14, 1990 this court held appellate review of this case was frustrated due to the lack of adequate special findings of fact. The case was remanded to the trial court for the entry of findings of fact in support of its amended judgment. 550 N.E.2d 846. Amended special findings were entered by the trial court on April 16, 1990.

Additional facts will be added as necessary to our discussion.

## DISCUSSION AND DECISION

■■■ This is an appeal from a judgment in which the trial court, on its own motion, entered special findings of fact. We will not reverse such a judgment unless the

---

1. Sand also named six (6) other parties as defendants to answer for any interest in the real estate; however, these defendants either failed to respond, or have disclaimed any interest or any interest superior to Sand's lien, and are not parties to this appeal.

findings or conclusions drawn therefrom are clearly erroneous. *Donavan v. Ivy Knoll Apartments Partnership* (1989), Ind.App., 537 N.E.2d 47; *Rose Acre Farms, Inc. v. Greemann Real Estate* (1987), Ind.App., 516 N.E.2d 1095, *trans. denied.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. A judgment is clearly erroneous when it is not supported by the special findings of fact. *Donavan.* We may not reweigh the evidence, and must affirm the trial court unless the evidence, viewed in a light most favorable to the trial court's decision, leads incontrovertibly to a conclusion opposite to the one reached by the trial court. *Donavan; Kokomo Veterans, Inc. v. Schick* (1982), Ind.App., 439 N.E.2d 639, *trans. denied.*

## I.

Both Sand and Gene challenge the trial court's damage award to Gene. Gene received buildings of the square footage for which he contracted; however, the trial court found the contract also included the representations of Sand's agent that the buildings as designed and contracted would be capable of maintaining a certain rate of production. The court found the buildings did not have this capacity, and Gene was entitled to damages for Sand's breach of the construction contract.

The trial court awarded Gene $251,082.00 in damages, based on the following findings of fact:

A. *Alleged Defects in Design.*

(i) *Spacing*

24. The representation that the specified Sand buildings could accommodate a production schedule of 180 pigs per week was a part of the Contract, and the Court finds that the space provided in the Sand Buildings is not adequate and within industry standards if pigs are retained in the various areas for the periods assumed in the design. Gene Clark has not asserted deficient spacing in the farrowing area. The only spacing issue is in the nursery and grower. The nursery provides 2.4 square feet per pig assuming 180 pigs per week and a 4-week stay. The grower provides 5.23 square feet per pig at 180 pigs per week staying 10 weeks. However, these dimensions, when considered in conjunction with Gene Clark's finisher area, create a "bottle neck" in the farrow to finish process. As the Clarks' experts testified, the design of the facility as it exists forces Gene Clark to sell "Feeder Pigs" and not utilize the full number born because of inadequate "nursery to grower" space. The Clark's expert, Larry Christianson, testified that in order to remove the defect in design of the facility, there should have been 30 additional grower pens.

.    .    .    .    .

27. The Court specifically finds the design by Sand to be defective in that it does not meet the represented 180 hogs per week production, and that the facility Sand designed and built for Gene Clark under their Contract is not capable of raising 180 pigs from farrow to finish on any continuing basis. As a result, Gene Clark has been deprived annually of the profit from about 1,800 market hogs, or about 35 per week. That profit is about $35. per head, being the profit lost when pigs are sold at feeder weight rather than market weight.

28. Because Gene Clark can build additional capacity, his weekly losses resulting from lack of grower/finisher space should not extend beyond the end of 1988. Because his crowding began in the middle of 1987, he is entitled to recover from Sand his losses experienced over one and one-half years at the rate set forth in paragraph 27 above, or a total of $94,500.

29. The Sand nursery is capable of producing only 178 pigs per week. Had Gene Clark operated his farrowing house and nursery to capacity he would still be short by two animals per week of the design goal. Accordingly, he will each week during the first 18 months of operation lose another $40., the profit on two feeder pigs. That totals $3,120. in 18 months.

30. The configuration of the nursery does not allow for an expansion of the nursery pens to provide room for an extra two pigs per pen. Accordingly, even when and if the grower-finisher is enlarged, Gene Clark will continue for the life of the facility to lose the profit on two market hogs—a total of $92.—per week. That profit will equal $4,784. per year, or $88,504. over the remainder of the 20–year life span of the facility as of the beginning of 1989.

31. Gene Clark's Counterclaim is an action for breach of contract. It is axiomatic that should he prevail on his Counterclaim, he can only recover for the loss of the benefits of his bargain with Sand; he can only recover what he paid for; he can be made whole, but not more than whole. Gene Clark contracted for and should pay for the space set forth in the Contract. The Court herein finds that Sand's design was defective and did not provide adequate space to produce the number of pigs Sand represented. Gene Clark's remedy, as set forth above in Findings 27–30, is the profits lost due to the defective design. Gene Clark cannot be made more than whole; he did not contract for more space than he received; more space would have cost more money; therefore, Sand will not be held responsible for the $130,000 sought by Gene Clark to expand the grower/finisher area since he neither bargained for nor paid for more space; his remedy for the breach of Sand's representation as to production is lost profits due to the defective design.

(ii) *Ventilation*

.   .   .   .   .

36. The Court finds, from the evidence, that the improper ventilation has cost Gene Clark $8,417. per year in lost profit due to slow growth of its animals, for a total of $12,625.50 over 18 months; and that the cost of repairing the defective ventilation systems in the buildings constructed by Sand will be $25,040.

B. *Poor Workmanship*

.   .   .   .   .

38. Gene Clark's cost to repair the contractual inadequacy of insulation is found to be $24,743.

.   .   .   .   .

48. The Court finds the cost to correct [the] plumbing defect to be $1,050.

.   .   .   .   .

C. *Miscellaneous Claims of Gene Clark*

.   .   .   .   .

55. *Telephone Bills.* Sand owes Gene Clark $929.51 for long distance telephone calls made by its employees.

56. *Hardware Changes* [sic]. Sand owed Gene Clark $170.84 for hardware it charged to the Clarks at a local store.

57. *Driveway.* During construction, Sand damaged the Clarks' driveway. It will cost $400. to repair that damage.

Amended Findings and Conclusions and Restated Judgment, filed April 16, 1990, pages 7–15.

■ In breach of construction contract cases, the proper measure of damages is either 1) the difference between the value of the building as constructed and what its value would have been had it been constructed in accordance with the contract, or 2) the reasonable cost of curing the defects to make the building conform to the contract. *Sanborn Electric v. Bloomington Athletic Club* (1982), Ind.App., 433 N.E.2d 81.

> [T]he factor that determines which of the alternative measures of damages applies is whether the defects may be remedied without taking down and reconstructing a substantial part of the building, or whether the defects could be repaired at a reasonable cost, or, as it is often stated, whether construction and completion in accordance with the contract would involve unreasonable economic waste.

*Id.* at 89 (citations and footnote omitted). The builder has the burden of proving that curing the defects would result in unreasonable economic waste. *Gough Construction Co. v. Tri–State Supply Co.* (1986), Ind.App., 493 N.E.2d 1283.

■ In addition to the above measure of damages, we note that a party injured by a breach of contract may receive consequential damages. *See Orto v. Jackson* (1980), Ind.App., 413 N.E.2d 273 (damages include those that may reasonably be considered to have arisen naturally from the breach or as may reasonably have been in contemplation of the parties as a probable result of its breach at the time they entered the contract). Such consequential damages may include lost profits, providing the evidence is sufficient to allow the trier of fact to estimate the amount with a reasonable degree of certainty and exactness. *See Uebelhack Equipment, Inc. v. Garrett Brothers, Inc.* (1980), Ind.App., 408 N.E.2d 136.[2]

■ In the present case, the trial court's finding that Gene can build additional capacity in the grower is supported by the evidence. An award of lost profits for a period of 18 months, presumably the time allowed Gene to build additional grower pens, is also reasonable and supported by the evidence. However, the court erred in not awarding Gene the funds required to build additional grower pens, i.e., the reasonable cost of curing the deficit to make the grower pens conform to the contract.

■ As for the spacing defect in the nursery area, the evidence supports the trial court's finding that the configuration of the nursery does not allow for expansion. Therefore, the reasonable cost to cure the defect is not an available measure of damages. The trial court's alternative award of lost profits due to insufficient space in the nursery for a period of 20 years is speculative at best. The proper measure of damages in such a situation is the difference between the value of the building as constructed and what its value would have been had it been constructed in accordance with the contract including the representations as to capacity. *Sanborn*, 433 N.E.2d at 88. Poor workmanship as found by the trial court is a factor to be considered by the trial court when determining this amount.

The trial court used an erroneous measure of damages when computing a large portion of its award to Gene. Therefore, we must reverse the trial court's damage judgment and remand this cause for a new trial on the issue of damages.

## II.

■ Don and Virginia claim the trial court erred in foreclosing Sand's mechanic's lien against their real estate because defects in the buildings exceeded any amount due under the contract. Sand argues the trial court was correct in not allowing Don and Virginia a set-off because there is a lack of mutuality.

This case does not involve a set-off or the principle of mutuality. Rather, the issue is whether Gene owes Sand any sum on the contract because Sand's mechanic lien attaches to Don and Virginia's real estate only to the extent there is a balance due on the contract.

Pursuant to its complaint Sand, among other things, had to prove Gene contracted with it for improvements to the real estate and Gene owed money on the contract. Gene, in defending against the Sand's claim, could and did assert "defects" in the improvements that were the subject of the contract. The trial court's findings reveal these defects were proven as were damages the defects caused Gene. In particular, the trial court found an essential term of the contract between Gene and Sand was the buildings, when completed, would be capable of producing 180 pigs per week. The trial court also found the buildings, as completed, did not fulfill this term as a result of which the buildings were defective and, therefore, Sand breached the contract. These defects necessarily constitute a defense to Sand's complaint because they diminish the amount due under the contract up to the amount of the claimed lien; damages in excess of that amount are recoverable only pursuant to Gene's counterclaim. In other words, to the extent Gene is dam-

---

**2.** The trial court's award to Gene for telephone bills, hardware charges, and driveway damage is a proper example of consequential damages.

aged by Sand's breach, there is no question of set-off or mutuality; there is only the question of what amount, if any, Gene owes Sand, on the contract. In turn, the answer to this question determines whether or not Sand is entitled to foreclosure of its lien because Sand's mechanic lien attaches to the Clark's real estate only to the extent Gene owes Sand on the contract.

The trial court found Sand was owed $80,568.00 on the contract but that Gene was damaged by Sand's defective performance in the amount of $251,082.00, an amount which is in excess of the balance of the contract. Had these damages been correctly determined, the trial court's judgment would have been clearly erroneous because it conflicts with its findings. The proper judgment would have awarded Sand $0 on its complaint and awarded Gene the difference between $251,082.00 and $80,-568.00, or $170,514.00, on the counterclaim. However, because the damages were erroneously determined, we remand with instructions that Sand's recovery under its complaint be reduced by the amount of Gene's damages. Any additional damages shall be recovered under the counterclaim. Of course, if Sand's judgment is $0, then it is not entitled to foreclose its mechanic's lien. Therefore, we also order the judgment of foreclosure vacated.

### III.

Don and Virginia also contest the validity of the foreclosure judgment on the grounds the legal description of the real property is insufficient. Although we reverse as to the foreclosure of the lien, we will consider this issue because the trial court must redetermine Gene's damages. Should the trial court find Gene's damages to be less than the amount of Sand's lien, the lien may be foreclosed only if the description of the real estate is proper.

The relevant part of the trial court's judgment is as follows:

1. On the original Complaint, in favor of Plaintiff Sand Livestock Systems, Inc., foreclosing the Plaintiff's mechanic's lien

against the property of Donald Clark and Virginia Clark (as described in Plaintiff's Exhibit 1 at trial) in the sum of One Hundred Seventy Five Thousand Four Hundred eight dollars ($175,408.00), representing $80,568.00 owed on the contract balance by Gene Clark, $84,204.00 attorneys' fees, and $10,636 interest.

Amended Findings And Conclusions and Restated Judgment, filed April 16, 1990, p. 18.

We first note that there is no Plaintiff's Exhibit 1 in the record before us. However, we assume the trial court intended to refer to Plaintiff's Exhibit A, which is a Copy of Sand's notice of intention to file a mechanic's lien. The notice described the real estate as:

Part of the East ½ of the NW ¼ of S. 36, T. 18 N., R. 1. E (approx. 19.09 A.);
Part of the East ½ of the NW ¼ of S. 36, T. 18 N., R. 1 E. (approx. 0.91 A.);
Part of the NW ¼ of the NW ¼ of S. 36, T. 18 N., R. 1 E. (approx. 20.0 A.);
Part of the SW ¼ of the S. 36 T. 18 N., R. 1 E. (approx. 23.28 A.);
Part of the E ½ of the NW ¼ of S. 36, T. 18 N., R. 1 E. (approx. 45.38 A.);
Part of the NW ¼ of the SE ¼ of S. 36, T. 18 N., R. 1 E. (approx. 40.0 A.); and
Part of the NW ¼ of S. 36, T. 18 N., R. 1 E. (approx. 51.18 A.)

Record at 506. This legal description was sufficient for the purpose of filing the lien notice.[3] However, Don and Virginia insist this legal description is insufficient to pass title and the trial court's judgment of foreclosure is thus invalid.

A description in a judgment affecting the title to property is sufficient where the property which is the subject of the judgment is described with sufficient certainty to identify it. *See Thain v. Rudisill* (1890), 126 Ind. 272, 26 N.E. 46. A description of land in a judgment may be clarified by extrinsic evidence. *Threlkeld v. Allen* (1892), 133 Ind. 429, 32 N.E. 576; *See Thain, supra* (judgment held valid which described land as lying between two other

---

**3.** *See* IC 32–8–3–3 (legal description in lien notice sufficient if it is substantially as set forth in the county auditor's transfer books at the time of filing).

tracts previously conveyed, which conveyances were recorded; description in the judgment could be made certain by reference to other deeds); *Clark v. Liem* (1953), Tex.Civ.App., 262 S.W.2d 764 (judgment held valid that described land as "all of lot No. 6 in a certain addition, the map and plat of which is stated as being found in Volume 196, p. 324 of the Deed Records of Shelby County").

■ In the present case, Don and Virginia admitted they owned the land described in Sand's lien notice, and that the Sand buildings were built on some of that land. Furthermore, we find that the officer charged with execution of the challenged judgment can, using extrinsic evidence, obtain the exact legal description of the real estate to be foreclosed.

The trial court's description of the real estate is sufficient to support a judgment foreclosing Sand's mechanic's lien if foreclosure is otherwise proper.

### IV.

Don and Virginia claim the trial court erred in awarding Sand $84,204.00 in attorney's fees. Under IC 32–8–3–15, if a mechanic's lienor shall "recover judgment in any sum," he is entitled to recover reasonable attorney's fees.

■ However, if a judgment on a counterclaim exceeds the judgment on the original claim, the latter judgment is defeated and the lienor is not entitled to attorney's fees. *See Complete Electric Co. v. Liberty National Bank and Trust Co.* (1988), Ind.App., 530 N.E.2d 1216.

In the instant case, because the trial court erred in foreclosing Sand's mechanic's lien, the trial court also erred in awarding Sand attorney's fees. However in the event the trial court computes Gene's damages arising from Sand's breach in an amount less than the balance due on the contract so that Sand's lien would be foreclosed, we will address the issue of reasonable attorney's fees.

■ What constitutes a reasonable attorney's fee in an action to enforce a mechanic's lien is a question of fact, the computation of which may depend on a variety of factors, including the time and effort required, the value of the interest involved, the experience, reputation, and ability of the attorneys performing the services, and the results secured at trial. *See Drost v. Professional Building Service Corp.* (1978), 176 Ind.App. 172, 375 N.E.2d 241, *trans. denied.* Don and Virginia urge us to find the trial court's award of $84,204.50 in attorney's fees, when the principal amount of the mechanic's lien to be foreclosed is $80,568.00, is manifestly unreasonable.

■ As a general rule, the trial court is given discretion in determining what constitutes a reasonable attorney's fee. *See Canaday v. Canaday* (1984), Ind.App., 467 N.E.2d 783. However, we believe

[t]he award of an attorney's fee, like the award of other costs of litigation, is not the same question as the determination of reasonableness of a fee as between the attorney and his client, or the actual expenses to be reimbursed the attorney by his client regardless of whether awarded under the cost bill.

*Ulibarri v. Gee* (1987), 106 N.M. 637, 639, 748 P.2d 10, 12. "The fee which an attorney expects from a client is the subject of a separate agreement between the attorney and client and is not directly dependent on whether the court awards fees or the amount of the fees awarded." The award of attorney's fees in an action to foreclose a mechanic's lien is not an attempt to compensate the attorneys for all the legal services performed in connection with the lien. Rather the amount of the award is intended to reflect the amount the lienholder reasonably had to expend to foreclose the lien. *See Smith v. Kendall* (1985), Ind.App., 477 N.E.2d 953 (discussing attorney's fee award in action to collect on promissory note). Such awards "should be made with caution so that property owners are not discouraged from challenging defective workmanship on the part of lien holders by excessive awards of attorney's fees." *Asp v. O'Brien* (1979), Minn., 277 N.W.2d 382, 385. The amount awarded as attorney's fees should therefore be reasonable in rela-

tion to the amount of the judgment secured. *Bloomington Electric Company v. Freeman's Inc.* (1986), Minn., 394 N.W.2d 605.

■ In the present case, we cannot say the fees accrued by Sand's counsel are excessive, either in terms of the number of hours billed or the amount charged per hour. However, in setting reasonable fees we admonish the trial court to keep in mind that an award of attorney's fees should be in reasonable relation to the amount of the judgment secured, and the policy of not discouraging valid claims by property owners.

### V.

■ Don and Virginia next challenge the trial court's award to Sand of $10,636.00 in prejudgment interest on the contract balance owed by Gene. "Prejudgment interest is allowed to compensate for loss of the use of money where a simple mathematical computation can operate on an amount for which the defendant is found to be liable." *Indiana Department of Public Welfare v. Chair Lance Service, Inc.* (1988), Ind., 523 N.E.2d 1373, 1379. The standard for awarding prejudgment interest is whether the principal amount is ascertainable by mere computation. *Courtesy Enterprises, Inc. v. Richards Laboratories* (1983), Ind.App., 457 N.E.2d 572.

The Clarks' sole allegation of error in this regard is based on the assumption the trial court erred in foreclosing Sand's mechanic's lien because there was no amount owing on the contract. We agree; therefore, if the trial court finds on remand that Gene's damages totally diminish Sand's lien, Sand is not entitled to prejudgment interest.

Affirmed in part, reversed in part, and remanded for further proceedings.

RATLIFF, C.J., and BAKER, J., concur.