**SAND CREEK COUNTRY CLUB, LTD,**
Appellant–Defendant Below,

v.

**CSO ARCHITECTS, INC., Appellee–Plaintiff Below.**

No. 46A03–9106–CV–175.

Court of Appeals of Indiana,
Third District.

Dec. 16, 1991.

Jeffrey L. Thode, Chesterton, for appellant-defendant below.

Sue Figert Meyer, Indianapolis, for appellee-plaintiff below.

STATON, Judge.

The Sand Creek Country Club, Ltd. appeals an adverse judgment, raising the following issues:

I. Whether there was a binding contract between the parties.

II. Whether the contract contained a condition precedent to obtain financing.

CSO Architects, Inc. cross-appeal, raising an additional issue:

III. Whether the trial court erred in failing to include statutory prejudgment interest as part of the judgment.

We affirm in part, reverse in part, and remand.

In 1988, Sand Creek Country Club, Ltd. ("the Club") entertained notions of expanding its clubhouse facilities. The Club contacted a number of architects in order to solicit designs for the proposed expansion. CSO Architects, Inc. ("CSO") was eventually selected to design the new facilities, and discussion began over the particulars of the project. The Club was eager to begin work on the new facilities, although financing had not yet been obtained.

On July 25, 1988, a letter was sent from CSO to a Club official containing the following language:

> As stated in my letter to you dated May 18, 1988, it was our intent to allow Mr. Dan Moriarity and Mr. Jim Schellinger of our office to start work on your project as early as possible in order to allow you to meet the goals that you have set for next fall. Also, it was the intent of CSO/Architects, Inc. to begin work on your project and delay any billings to you until your financing is in place. As I explained to you earlier, we will continue on this course until we reach a point where we can no longer continue without receiving some payment. Hopefully your financing will be in place long before we reach that point.

Record, p. 98. The letter went on to discuss the proposed fee structure to be included in the AIA contract. The letter continued:

> When your financing is in place and the scope of work has been determined for any phase of the work, CSO/Architects, Inc. will prepare an AIA Contract in accordance with the guidelines set forth in this letter and it is hereby understood that nothing contained in this letter shall bind either until said AIA document is executed by both parties.

Record, p. 99. The letter was signed by a CSO representative and signed by a Club official as "accepted".

At a meeting on September 9, 1988, Club officials gave CSO the "go-ahead" to begin work on the construction drawings. After the meeting, the Club president asked CSO's executive vice-president to get together an American Institute of Architects (AIA) Contract and send him a billing for $25,000 to cover work performed to that date.

A billing for the work performed was sent and no response was received. Further billings and inquiries similarly elicited no response. CSO eventually stopped work on the project and filed suit against the Club for breach of contract, requesting damages in the amount of $33,649.28 plus prejudgment interest.[1] Following a bench trial, the trial court entered judgment for CSO in the amount of $33,649.28.

The trial court entered findings of fact and conclusions of law on its own motion. We are bound to review special findings of fact and conclusions of law under the following standard: we first must determine whether the evidence supports the findings; then determine whether the findings support the judgment. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, 870, *transfer denied*. The judgment of the trial court will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. *Brancheau v. Weddle* (1990), Ind.App., 555 N.E.2d 1315, 1317. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Indiana Dept. of Correction v. Stagg* (1990), Ind.App., 556 N.E.2d 1338, 1341, *transfer denied*. However where, as here, the trial court makes findings upon its own motion, the general judgment will control as to the issues upon which no findings were made and the specific findings control as to the issues which they cover. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 652. The general judgment will be affirmed if it can be sustained upon

---

1. The parties have stipulated that $33,649.28 was a reasonable value of the services performed by CSO on the Sand Creek project.

any legal theory by the evidence introduced at trial. *Id.*

## I.

### *Contract*

The Club argues that there was no binding contract between the parties, relying upon the language in the July 25 letter stating that nothing contained therein would bind the parties. The trial court found that there was an agreement between the Club and CSO whereby CSO would provide architectural services and the Club would pay for the services. The Club argues that the letter was merely an "agreement to agree" which is unenforceable. *See Wallace v. Mertz, Adm'r* (1927), 86 Ind.App. 185, 156 N.E. 562.

 The letter, however, was not the only evidence of an agreement between the parties. To be valid, a contract need not be in writing, but in some circumstances may be partly in writing and partly oral, or solely oral. *Citizens Progress Co. v. James O. Held & Co.* (1982), Ind.App., 438 N.E.2d 1016, 1021. There was also evidence that Club officials gave CSO the "go-ahead" to begin construction drawings and that the Club president instructed a CSO official to begin billing for work performed. This evidence supports the trial court's finding that there was an agreement between the parties that CSO would provide architectural services and the Club would pay for those services. In fact, the Club specifically requested an early start by CSO so that the project could be expedited. While the letter may have constituted an "agreement to agree" to make an AIA contract, it was also evidence of the parties' intention that CSO begin work on the project, *prior to the execution of the contemplated AIA contract,* for which it clearly intended to be compensated. Nor did the disclaimer contained in the letter apply to the collateral oral agreement between the parties. We conclude that there was a binding contract between the parties.

## II.

### *Condition Precedent*

The Club argues that the parties made the Club's ability to obtain financing for the project a condition precedent to its obligation to pay for the services rendered by CSO. The trial court found otherwise.

 A condition precedent is a condition which must be satisfied before an agreement becomes enforceable or a condition which must be fulfilled before the duty to perform an already existing contract arises. *Kokomo Veterans, Inc. v. Schick* (1982), Ind.App., 439 N.E.2d 639, 645, *transfer denied.* Conditions precedent are disfavored and must be explicitly stated. *Krukemeier v. Krukemeier Mach. & Tool* (1990), Ind.App., 551 N.E.2d 885, 889.

 The evidence here supports the finding of the trial court. The language of the letter states that CSO would delay billing until the Club's financing was in place. This does not evidence an intent to absolve the Club of financial responsibility for work performed if it did not obtain financing. Rather, it was convenient to bill at that time, to insure that money would be readily available. The intent that CSO be paid for its services in the preliminary stages of the project is shown by the Club's request that a bill be sent even before financing was obtained, and by CSO billing the Club for the preliminary work. Nowhere in the record is there an indication that the parties intended that CSO would perform architectural services worth over $33,000 free of charge if the Club's financing fell through. Accordingly, we conclude that the trial court did not err in finding that the Club's ability to obtain financing was not a condition precedent to payment for CSO's services.

## III.

### *Prejudgment Interest*

 CSO cross-appeals, claiming that the trial court erred in failing to award prejudgment interest. We note initially that the Club has failed to file a reply brief or respond to CSO's cross-appeal in any way. Where an appellant fails to file a response to a cross-appeal, the cross-appellant may

prevail if its brief presents a prima facie case of error. *McBride v. Cox* (1991), Ind. App., 567 N.E.2d 130, 134, *reh'g denied, transfer pending.* Prima facie error is "error at first sight, on first appearance, or on the face of it." *Id.*

An award of prejudgment interest in a contract case in Indiana is warranted if the terms of the contract make the claim ascertainable and the amount of the claim rests upon mere computation. *Layden v. New Era Corp.* (1990), Ind.App., 575 N.E.2d 638, 641; *Monroe Cty. Comm. School v. Frohliger* (1982), Ind.App., 434 N.E.2d 93, 97. Thus, the award is proper where the trier of fact need not exercise its judgment to assess the amount of damages. *Lystarczyk v. Smits* (1982), Ind. App., 435 N.E.2d 1011, 1015. The purpose for an award of prejudgment interest is to fully compensate an injured party for the lost use of money. *Layden, supra; Bd. of Public Works v. L. Cosby Bernard* (1988), Ind.App., 528 N.E.2d 93, 95. Prejudgment interest is computed from the time the principal amount was demanded or due and is allowable at the permissible statutory rate when no contractual provision specifies the interest rate. *Monroe Cty., supra;* IC 24–4.6–1–103 (1988). An award of prejudgment interest is generally not considered a matter of discretion. *Erie–Haven v. Tippmann Refrigeration Const.* (1985), Ind.App., 486 N.E.2d 646, 649.

Here, CSO requested prejudgment interest in its complaint for relief. In a letter to the Club dated April 27, 1989, CSO indicated to the Club that it had spent $33,649.00 in initial project development costs. This letter was also the second requesting the initial payment of $25,000 pursuant to the Club president's oral promise. Thus, as of April 27, 1989, damages were readily ascertainable. This is shown by the fact that the parties stipulated the reasonable value of the services performed was $33,649.28—the trier of fact did not need to exercise judgment to determine damages. *Lystarczyk, supra.*

CSO has demonstrated prima facie error by the trial court. Because the amount of damages was ascertainable by April 27, 1989, the trial court erred in failing to award prejudgment interest from that date as part of the judgment. *Abex Corp. v. Vehling* (1983), Ind.App., 443 N.E.2d 1248, 1260, *reh'g denied.* We therefore remand to the trial court in order that prejudgment interest be added to the judgment for CSO. Interest should be computed at the statutory rate of 8% from April 27, 1989 to the date of judgment on the amount of $33,-649.28.

For the foregoing reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

HOFFMAN, J., concurs.

GARRARD, J., concurs in part and dissents in part and files separate opinion.

GARRARD, Judge, concurring in part and dissenting in part.

I concur with the majority concerning the two issues presented by Sand Creek. However, I dissent to its resolution of the issue concerning prejudgment interest raised in the cross-appeal.

As the majority acknowledges, the Indiana rule permits the award of prejudgment interest where the damages are liquidated, including instances where they may be determined by mere mathematical computation.

The damages were not liquidated in the present case. Instead, since the price was not specified in the contract found to exist, damages were the *reasonable value* of the services rendered. They were not ascertainable by mere computation. *See, e.g., Travelers Indemnity Company v. Armstrong* (1982) Ind., 442 N.E.2d 349, 365–66; *Wilson v. Jenga Corp.* (1986) Ind.App. 490 N.E.2d 375, 377. Neither the fact that CSO asserted by letter what it thought the value of the services to be, nor the fact that at the trial the parties were able to agree to a stipulation of reasonable value, alters in the slightest the unliquidated nature of the claim. Therefore the court correctly denied the claim for prejudgment interest.

I would affirm the judgment in its entirety.