**James L. KITTLE, Sr., Plaintiff and Counterdefendant,**

v.

**NEWELL COACH CORPORATION, Defendant and Counterclaimant.**

No. IP–91–915 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 14, 1993.

---

3. The general tort of invasion of privacy has four distinct strands: 1) unreasonable intrusion upon the seclusion of another; 2) appropriation of the other's name or likeness; 3) unreasonable publicity given to the other's private life; and 4) publicity that unreasonably places the other in a false light before the public. Restatement (Second) Torts, § 652A(2) at 376 (1977); Prosser & Keaton, Torts § 117 at 802 (4th ed. 1971).

Lee B. McTurnan, McTurnan & Turner, Indianapolis, IN, for plaintiff.

Joseph H. Yeager, Jr., Karen A. Courtney, Barnes & Thornburg, Indianapolis, IN, Joseph J. McCain, J. David Jorgenson, John A. Bugg, Conner & Winters, Tulsa, OK, for defendant.

## MEMORANDUM ENTRY

BARKER, District Judge.

Plaintiff James L. Kittle, Sr., ("Kittle") brings a Motion for Summary Judgment on Contract Liability and Return of Deposit. Defendant Newell Coach Corporation ("Newell") opposes Kittle's motion and asks for summary judgment in its favor. For the reasons stated below, we find that no valid contract exists and grant Kittle's motion for summary judgment only with regard to the return of his deposit with prejudgment interest. We deny the remaining part of Kittle's motion for summary judgment and deny Newell's motion for summary judgment and dismiss his counterclaim.

## BACKGROUND

Newell is an Oklahoma corporation that manufactures and sells motor coaches. On May 16, 1991, Kittle, a businessman from Indianapolis, wrote Karl Blade ("Blade"), Newell's president and owner, and offered to purchase a coach from Newell under the following terms:

I will pay 20% *with* my order; or *$62,378;* and I will pay 75% of the remainder; or *$197,134* plus sales tax of *$8,750* upon delivery and acceptance; and I will pay the *balance;* or *$62,379* on the 30th day following delivery and my acceptance for a sale price total of *$311,811 plus $8,750* of Indiana Sales Tax. Ex. 22/63 (emphasis in original). *See* Complaint, Exhibit B, at p. 3.

In a letter dated May 21, 1991, Karl Blade responded to Kittle's letter as follows:

"... The proposal contained in your letter of May 16, 1991 is acceptable to Newell. I would like to offer the following clarifications:

* Your proposal is unclear as to the collection of the Indiana sales tax. All of our coach sales transactions are net of any state taxes and fees. The customer pays his applicable taxes and fees in his home state using the documentation we have prepared. We deliver coaches using a temporary permit which is valid for 30 days.

* With the exception of the above clarifications regarding sales tax collection, the payment terms you offer are accepted. We will confirm the balance due at delivery, $62,379, using a note which will bear no interest for 30 days, secured by the coach. I will discount the note to my bank who has already approved the transaction without requiring any additional documentation, financial statements, etc. from you.

.    .    .    .    .

All things said and done, we are pleased to go forward with this transaction with you.... Your offer is acceptable because of current market conditions and our desire to maintain market share in a very competitive market, plus the personal desire to capture you and Ron as customers. Please confirm your acceptance by signing below and transmitting a copy back to me. Unless you prefer the use a (sic) wire transfer, I suggest the deposit be sent to use by regular mail, a company check or personal check being perfectly satisfactory of course. *See* Complaint, Exhibit C.

Kittle never signed the form that Blade mailed to him. However, on May 22, 1991, Kittle replied to Blade's May 21 letter as follows:

A very good day to you Karl ... along with my thanks for your kind letter of May 21, 1991. Ron and I are looking forward to experiencing the joy of owning a beautiful Newell Coach.... in response to your

letter I believe we mutually understand both the 'tax issue' you raised and the final payment methodology.

.... as agreed I am enclosing my check for $62,378 as my deposit; and, at this point, I believe I will just pay as I stated earlier. However Coopers and Lybrand, my accounting firm, seem to believe I should be looking for 'interest charge off's' inasmuch as I have none at this time.... therefore, let's leave this 'open' 'til I make the decision.

Newell interpreted Kittle's May 22 letter as an acceptance of its clarifications and demanded a promissory note for the $62,379 balance upon delivery of the coach. When Kittle refused to execute the note, Newell did not deliver the coach. Kittle now sues for his $62,378 deposit plus prejudgment interest, contractual damages in excess of $80,000 and punitive damages.

## DISCUSSION

### SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

## VALIDITY OF THE CONTRACT

We first address whether Newell's statement of additional terms prevented the formation of a valid contract between Kittle and Newell. Ind.Code § 26–1–2–207 abandons the mirror image rule that an acceptance must coincide exactly with all terms of an offer. *See Continental Grain Co. v. Followell,* 475 N.E.2d 318, 322 (Ind.App. 1 Dist. 1985). Section 26–1–2–207 states:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, **unless acceptance is expressly made conditional on assent to the additional or different terms.** (emphasis added).

(2) The additional terms are to be construed as proposals for addition to the contract.

Without question, Blade made a "definite and seasonable expression of acceptance" in his reply letter to Kittle's offer. Thus, the only issue is whether Blade's acceptance was conditional on Kittle's assent to additional terms. Kittle contends that Newell's characterization of its additional terms as "clarifications" and its repeated statement of its acceptance show that its acceptance of Kittle's offer was not even remotely "expressly made conditional on his assent to additional or different terms."

However, in *Continental Grain Co. v. Followell,* 475 N.E.2d 318 (Ind.App. 1 Dist.1985), the court held that a grain company did not accept a farmer's offer under Ind.Code § 26–1–2–207(1) because the company's confirmation diverged materially from the offer with regard to the terms of delivery. The court reasoned that the phrase "unless acceptance is expressly made conditional on assent to the additional or different terms" imposed "a limitation upon how much an acceptance can differ and still be considered an acceptance at all." 475 N.E.2d at 322. Quoting J. White & R. Summers, *Uniform Commercial Code,* Chap. 1 (2d ed. 1980), the court noted:

We think that in the usual purchase order-acknowledgment context the forms do not approach this limit at least if the forms do not diverge as to price, quality, quantity, or delivery terms, but only as to the usual unbargained terms on the reversed side concerning remedies, arbitration and the like. (emphasis added). *Id.* at 27.

We find that despite Blade's repeated statements of his acceptance of Kittle's offer, his second "clarification" changed the material terms of Kittle's offer regarding the time and means of payment and was therefore not an acceptance under § 26–1–2–207(1). Kittle offered to "pay the *balance;* or *$62,379* on the 30th day **following delivery.**" (emphasis added). Blade, Newell's President, responded:

> We will confirm the balance due **at delivery,** $62,379, using a note which will bear no interest for 30 days, secured by the coach. I will discount the note to my bank who has already approved the transaction without requiring any additional documentation, financial statements, etc. from you. (emphasis added).

Because Blade's demand for immediate payment affects the price of the coach by the amount of the time value of $62,379, we find that his "clarification" exceeded the limitation on how much an acceptance can vary from the offer and still be considered an acceptance under § 26–1–2–207(1). We hold that Newell's changing of a material term of Kittle's offer nullified its professed acceptance; therefore, no valid contract exists between the parties. Our holding is consistent with the general principle that in order for a contract to be enforceable, it must be "reasonably definite in its material terms so that the intention of the parties may be ascertained and must also embody the legal essence known as mutuality." *Kokomo Veterans v. Schick,* 439 N.E.2d 639, 644 (Ind.App. 3 Dist.1982). The terms regarding time and method of payment of the final installment affected the price of the coach and were material terms that were not reasonably definite based on the parties' correspondence. Finding no valid contract, this Court need not reach the issues raised on the parties' summary judgment motions regarding whether Kittle accepted Newell's additional clarifications.

## RETURN OF DEPOSIT

██ Because no contract exists between the parties, Kittle is entitled to the return of his initial deposit with prejudgment interest because Kittle should be compensated for the lost use of his deposit money. *See Sand Creek Country Club v. CSO Architects, Inc.,* 582 N.E.2d 872, 876 (Ind.App. 3 Dist.1991). The interest should be calculated at the permissible statutory rate.[1]

## CONCLUSION

This Court grants Plaintiff Kittle's motion for summary judgment only with regard to the return of his deposit of $62,378 plus prejudgment interest. We deny all remaining parts of Kittle's summary judgment motion. We also deny Newell's motion for summary judgment and dismiss its counterclaim. Each side is to bear its own costs.

It is so ORDERED.

---

1. The statutory rate is governed by Ind.Code § 24–4.6–1–103:

    Interest at the rate of eight percent (8%) per annum shall be allowed: (a) From the date of settlement on money due on any instrument in writing which does not specify a rate of interest and which is not covered by IC 24–4.5 or this article; (b) And from the date an itemized bill shall have been rendered and payment demanded on an account stated, account closed or for money had and received for the use of another and retained without his consent.