Ronald JOHNSON, et al., Appellants–
Defendants,

v.

William BLANKENSHIP, and Sue
Blankenship, Appellees–
Plaintiffs.

No. 71A03–9604–CV–118.

Court of Appeals of Indiana.

April 11, 1997.

Rehearing Denied July 11, 1997.

Donald E. Wertheimer, South Bend, for
Appellants–Defendants.

Stephen L. Eslinger, Ralph A. Caruso, II,
Botkin Leone & Eslinger, South Bend, for
Appellees–Plaintiffs.

## OPINION

STATON, Judge.

Ronald Johnson appeals the trial court's judgment in favor of William and Sue Blankenship.[1] He presents six issues for our review which we consolidate, reorder and restate as follows:

I. Whether the notice of intent to hold a mechanic's lien was adequate.

II. Whether the evidence supports the finding that Jenni Galloway had authority to execute the contract on Johnson's behalf.

III. Whether the trial court erred in excluding the testimony of Johnson's expert witness.

IV. Whether an award of prejudgment interest was proper under the circumstances.

V. Whether the award of attorney fees was excessive.

We affirm.

Johnson owned a building located at 2335—2337 Prairie Avenue in South Bend. Two businesses were located in the building—Vic and Cindy's Grill and Porky J's Liquor Store. Porky J's was owned by Johnson's mother who lives in Florida.

The roof on the building began leaking. After Johnson was unsuccessful in repairing the leaks, an employee of Porky J's asked Blankenship, who was a customer, to check the roof. Blankenship determined that the building needed a new roof. Jenni Galloway, another Porky J's employee and Johnson's girlfriend, asked Blankenship for an estimate for replacing the roof. Blankenship provided a written estimate in the amount of $5,775.

He then met with Johnson to discuss the contract. Johnson approved the contract terms and told Blankenship to take the contract to Galloway for signature. After Galloway reviewed the contract, she stated that Johnson had told her to sign it but that he wanted a provision added which prevented the work from beginning for four weeks. The provision was added and the contract signed by Galloway.

Work began on the roof and continued for almost two weeks. When the work was almost complete, Johnson stopped Blankenship and prevented him from finishing the project. At that point, all that remained was installation of the edging on one side of the roof. Blankenship demanded payment for the repairs to the roof. When Johnson refused to pay, Blankenship filed a notice of intent to hold a mechanic's lien against the property and later, an action for foreclosure of the lien. After six years of litigation, a trial resulted in a judgment in favor of Blankenship in the amount of $29,241.[2] This appeal ensued.

## I.

### *Mechanic's Lien*

■ Johnson's first argument concerns the adequacy of the mechanic's lien notice filed by Blankenship. We note at the outset that the trial court entered findings of fact and conclusions to support the judgment. When a party has requested specific findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App. 1991), *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App.

---

1. We note at the outset Appellant's failure to make marginal notations on *each* page of the transcript of evidence indicating the name of the witness and whether the examination is direct, cross, or redirect as required by Ind. Appellate Rule 7.2(A)(3)(a). This failure made our review of the record more difficult.

2. The trial court awarded Blankenship $5,775 on the contract, $2,966 in prejudgment interest, and $20,500 in attorney fees.

1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

Here, the record does not reflect a request for such findings by either party. Instead the trial court entered the specific findings of fact and conclusions *sua sponte.* However, the same standard of review applies when the trial court gratuitously enters specific findings of fact and conclusions, with one notable exception. When the trial court enters such findings *sua sponte,* the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis,* 575 N.E.2d 650, 652 (Ind.Ct.App.1991). We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

Johnson argues that Blankenship's notice of mechanic's lien does not comply with the requirements of IND.CODE § 32–8–3–3 (1988) because it does not specifically identify the improvements made by him. To support his argument, Johnson refers us to *Cato v. David Excavating Co., Inc.,* 435 N.E.2d 597 (Ind.Ct.App.1982). *Cato* held that "the statutory requirement of a statement of intention to hold a lien upon property implies that some reference to the improvement be made which will distinguish it from other improvements to which the lien does not attach." *Id.* at 606. This court has specifically rejected *Cato*'s holding and instead has held that

compliance with the statutory requirement of legal description, street and number is sufficient to satisfy the purpose of the statute.[3] *See Thomas J. Henderson, Inc. v. Leibowitz,* 490 N.E.2d 396, 398 (Ind.Ct.App.1986); *O.J. Shoemaker, Inc. v. Bd. of Trustees,* 479 N.E.2d 1349, 1351 (Ind.Ct.App.1985). As the *O.J. Shoemaker* Court held, the implicit requirement in *Cato* is important only to the enforcement of the lien, not to the purpose of giving adequate notice. With further inquiry, any interested person can discover the extent of the lien. *Id.* The trial court properly rejected Johnson's request to apply *Cato* and find the notice of intent to hold a lien inadequate.

## II.

### *Actual Authority*

■ Johnson next argues that the evidence is insufficient to support the trial court's finding that Galloway had actual authority to bind him to the contract. When one person gives another person authority to act on his behalf, an agency relationship is created. *Mullen v. Cogdell,* 643 N.E.2d 390, 398 (Ind.Ct.App.1994), *reh. denied, trans. denied.* Generally, the question of whether an agency relationship exists is a question of fact. *Medtech Corp. v. Indiana Ins. Co.,* 555 N.E.2d 844, 850 (Ind.Ct.App.1990), *trans. denied.* To establish an agency relationship three elements must be shown: (1) a manifestation of consent by the principal to the agent, (2) an acceptance of the authority by the agent, and (3) control exerted by the principal over the agent. *Id.* These elements can be proven by circumstantial evidence. *Mullen, supra,* at 398.

Here, although the evidence is conflicting, there is evidence to support each of the

---

3. IC 32–8–3–3 provides:

Any person who wishes to acquire a lien upon any property, whether his claim be due or not, shall file in the recorder's office of the county at any time within sixty (60) days after performing such labor or furnishing such materials or machinery described in section 1 [IC 32–8–3–1] of this chapter, a sworn statement in duplicate of his intention to hold a lien upon such property for the amount of his claim, specifically setting forth the amount claimed, the name and address of the claimant and the

name of the owner, and shall give legal description, street and number, if any, of such lot or land on which the house, mill, manufactory or other buildings, bridge, reservoir, system of waterworks or other structure may stand or be connected with or to which it may be removed. The name of the owner and legal description of such lot or land will be sufficient if they are substantially as set forth in the latest entry in the county auditor's transfer books at the time of filing of the notice of intention to hold a lien.

elements of an agency relationship. First, Galloway stated that she had been told by Johnson to sign the contract.[4] This is a manifestation of consent by the principal to the agent. Next, the acceptance of the authority by Galloway is shown by the fact that she signed the contract after being authorized to do so by Johnson and her statements that she was doing so pursuant to Johnson's instructions. Finally, Johnson's control over Galloway's actions is shown by the alterations she made to the document pursuant to his instructions and her testimony that she always talked with Johnson prior to signing any contracts for repairs to the building to determine what she should do. Johnson points to evidence which contradicts the foregoing evidence to support his argument that the finding of actual authority is not supported by the evidence. However, this is simply an invitation to reweigh the evidence which we will not do. *DeHaan, supra,* at 1320. Because there is evidence to support the trial court's findings, we conclude that the finding that Galloway possessed actual authority to bind Johnson to the contract is not clearly erroneous. *Id.*

### III.

#### Expert Testimony

■ At trial, Johnson offered the testimony of Lowell Blackwell as an expert witness concerning the quality of the repairs performed by Blankenship. Blankenship objected to Blackwell's testimony because Johnson had failed to disclose Blackwell as an expert witness prior to trial. The trial court agreed and excluded Blackwell's expert opinions, but allowed him to testify as a lay witness concerning his observations of the condition of the roof.

A trial court has broad discretion in ruling on discovery issues. *Lucas v. Dorsey Corp.,* 609 N.E.2d 1191, 1195 (Ind.Ct.App.1993), *trans. denied.* We review the trial court's decision in view of the facts and circumstances surrounding the decision. *Id.* We

will only reverse the trial court's ruling if it is clearly against the logic and facts before the court. *Cooper v. Cooper,* 608 N.E.2d 1386, 1388 (Ind.Ct.App.1993). However, because a discovery ruling is so fact sensitive, the trial court's decision is cloaked with a presumption of correctness. *Lucas, supra,* at 1197.

Ind. Trial Rule 26(E) requires supplementation of discovery responses after the initial response. This duty to supplement is absolute and is not predicated upon a court order. *Id.* at 1196. If a party fails to conform to the requirements of T.R. 26(E) and does not supplement discovery responses concerning experts to be utilized at trial, the trial court can in its discretion, exclude the testimony of the witness. *Id.* at 1196–97.

Johnson argues that T.R. 26(E) is not applicable to this case because the court entered a pretrial order. Once the court enters such an order, the order controls discovery rather than T.R. 26. Because the pretrial order did not specifically require supplementation of the discovery responses, no supplementation was required. In support of this argument, Johnson cites *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175 (Ind. 1993). However, *McCullough* is clearly distinguishable from the present case. In *McCullough,* the pretrial order was issued one and one-half years before the trial and early in the discovery process. *Id.* at 177. The undisclosed expert was not retained until after the pretrial order had been entered. Here, the pre-trial order was entered only one week before trial. The only mention of discovery was that the discovery process was completed and that witness lists had been exchanged. Because the pretrial order was entered so close to trial, the purpose was not to cover the course of proceedings leading up to trial but rather to finalize the issues, witnesses and exhibits for the trial. There was no reason for the trial court to order supplementation of discovery responses so close to trial. Moreover, Blackwell was retained sev-

---

4. Generally, a finding that an agency relationship existed cannot be predicated solely upon the declarations of the alleged agent. *United Artists Theatre Circuit, Inc. v. Indiana Dept. of Revenue,* 459 N.E.2d 754, 758 (Ind.Ct.App.1984), *reh. de-*

*nied, trans. denied.* Here, Galloway's statements are corroborated by the testimony of Blankenship that Johnson told him to take the contract to Galloway for her signature.

eral years prior to the entry of the pretrial order rather than after the entry of the pretrial order as in *McCullough*. The discovery responses should have been supplemented long before the pretrial order was entered.

Johnson had a duty to supplement his discovery responses pertaining to any experts he intended to call as witnesses at trial. T.R. 26(E); *Lucas, supra*, at 1196. He did not supplement his answers and place Blankenship on notice that he intended to call Blackwell as an expert witness.[5] This is clearly a violation of the absolute duty of supplementation and the trial court had discretion to exclude Blackwell's testimony because of this failure. We cannot say that its decision was clearly against the logic and facts before it. Therefore, we conclude that no abuse of discretion occurred.

## IV.

### *Prejudgment Interest*

■ In its judgment, the trial court awarded Blankenship $2,966 in prejudgment interest. Johnson argues that this award was erroneous because the damages were not fixed and ascertainable. The purpose of an award of prejudgment interest is to compensate the injured party for the lost use of money. *Sand Creek Country Club Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 876 (Ind.Ct.App.1991). An award of prejudgment interest is warranted if the contract terms make the claim ascertainable and the amount rests upon mere calculation. *Id.* The trier of fact does not have to exercise its judgment in determining the amount of dam-

ages. *Id.* The award of prejudgment interest is generally not a matter of discretion. *Id.*

Here, the amount of the claim was the contract price and, thus, was easily ascertainable.[6] The trial court did not have to exercise its judgment to determine the damages, it simply had to look to the contract. *Id.* Accordingly, we conclude that the trial court properly awarded prejudgment interest to Blankenship.

## V.

### *Attorney Fees*

■ The trial court awarded Blankenship $20,500 in attorney fees under IND.CODE § 32-8-3-14 (1993). Johnson argues that this amount is excessive and unreasonable and urges us to reverse the trial court's award of attorney fees. The determination of reasonable attorney fees in an action to enforce a mechanic's lien is generally a question of fact. *Clark's Pork Farms v. Sand Livestock Sys., Inc.*, 563 N.E.2d 1292, 1300 (Ind.Ct.App.1990). It depends upon many different factors including "the time and effort required, the value of the interest involved, the experience, reputation, and ability of the attorneys performing the services, and the results secured at trial." *Id.* Because of the fact-sensitive nature of the determination, the trial court is given a great deal of discretion in making the decision of what constitutes reasonable attorney fees. *Id.* We will only reverse the trial court's decision concerning attorney fees if there is a total lack of supporting evidence or the evidence is undisputed and leads solely to a contrary

---

**5.** Johnson argues that Blankenship should have been put on notice that he intended to call Blackwell as an expert witness when he used an affidavit from Blackwell to oppose Blankenship's motion for summary judgment. However, simply because he used the affidavit for summary judgment purposes does not mean that he intended to use Blackwell's testimony at trial. Blankenship is entitled to rely upon the trial rules and presume that because Johnson had not identified Blackwell as an expert to be used at trial he would not attempt to introduce his expert testimony. Furthermore, even though Blackwell was listed on a pretrial witness list, he was not identified as an expert. He had first-hand knowledge of the condition of the roof which he was permit-

ted to relate at trial as a lay witness. Thus, his inclusion on the witness list did not necessarily mean he would be used as an expert at trial.

**6.** Johnson argues that the amount of damages was not easily ascertainable because the repairs to the roof were substandard. Simply by alleging defective performance of the contract, Johnson cannot make the amount of the damages unascertainable. Instead, if the trial court had agreed with him, a setoff for the defects would be applied to the contract price. *Korellis Roofing, Inc. v. Stolman*, 645 N.E.2d 29, 33 (Ind.Ct.App. 1995). The amount remaining would then be subject to prejudgment interest. *Id.*

conclusion. *Korellis Roofing, Inc. v. Stolman*, 645 N.E.2d 29, 34 (Ind.Ct.App.1995).

What constitutes reasonable attorney fees, however, is not determined merely by the fee arrangement between the attorney and client. *Clark's Pork Farms, supra,* at 1300. The purpose of the award of attorney fees is not to compensate the attorney for all work performed. Instead, the award should reflect the amount the lienholder reasonably had to incur to foreclose the lien. *Id.* It should be reasonable in relation to the amount of the judgment awarded to prevent property owners from being discouraged from challenging defective work by the lienholder for fear of excessive attorney fees. *Id.* at 1300–01.

Here, Blankenship was awarded $5,775 under the contract. The trial court noted in its judgment that the award of attorney fees was three times the amount of the judgment. However, it found that the fees were nonetheless reasonable considering the complexity and length of the case. It did not simply base the amount of the award on the fee agreement between Blankenship and his attorneys. Rather, the trial court determined that $20,500 was the amount Blankenship reasonably had to expend to foreclose the lien. *Id.* at 1300. Moreover, the trial court specifically found that Blankenship repaired the roof in "a workmanlike manner." Record at 341. Thus, the public policy of not discouraging property owners from challenging defective work is not violated because there was no defective work in this case. *Clark's Pork Farms, supra,* at 1300–01. Considering the evidence as a whole, we conclude that the trial court balanced all of the considerations in determining what constituted a reasonable attorney fee. We cannot say that the evidence leads unerringly to a contrary result. *Korellis, supra,* at 34. Accordingly, we find no abuse of discretion in the award of attorney fees.

Affirmed.

HOFFMAN, and CHEZEM, JJ., concur.