**MICRO DATA BASE SYSTEMS, INC., Plaintiff,**

**v.**

**STATE BANK OF INDIA, Defendant.**

**No. 4:00CV 0047AS.**

United States District Court,
N.D. Indiana,
Hammond Division.

Dec. 5, 2001.

Elizabeth B. Searle, William P. Kealey, Lafayette, IN, for Plaintiff.

James R. Schrier, Lafayette, IN, John W. Moore, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Judge.

This is a civil action seeking damages for breach of contract and for copyright infringement pursuant to 17 U.S.C. § 501. Originally, this action was filed in Tippecanoe Superior Court II. That action consisted of two separate counts: 1) breach of contract and 2) accounting. The case was then removed by the Defendant, State Bank of India ("State Bank"), to this court based upon diversity of citizenship. 28 U.S.C. § 1332. Subsequently, the Plaintiff, Micro Data Base Systems, Inc. ("MDBS"), amended its complaint to reflect the above stated causes of action. On October 22–23, 2001, the court conducted a bench trial in the above entitled action. The court now issues its findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

### I. FINDINGS OF FACT

#### A. JURISDICTION, VENUE AND CHOICE OF LAW

Jurisdiction and venue are proper in this Court. Micro Data Base Systems, Inc. is an Indiana corporation having its principal office and place of business in West Lafayette, Indiana. State Bank of India is a corporation, organized and existing under the laws of India, with its principal office and place of business in Mumbai, India. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1338(a); and principles of supplemental jurisdiction. State Bank continues to contest personal jurisdiction as asserted in its First and Second Affirmative Defense. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

MDBS filed its complaint against State Bank in the Tippecanoe Superior Court II, and State Bank removed it to this court on

grounds of diversity and federal question jurisdiction. State Bank has a long-standing, major office in Chicago that conducts banking activity in a broad region that includes Indiana. Ex. 105. On February 13, 2001, State Bank raised an affirmative defense as to this court's personal jurisdiction over it with regard to MDBS's copyright claims in accordance with Rule 12(h)(1) of the Federal Rules of Civil Procedure. However, State Bank did not actively contest this issue until the submission of its post trial brief despite its initial objection to personal jurisdiction on November 14, 2001, almost nine months after raising this defense. With respect to Count II, State Bank has agreed by contract that any dispute between State Bank and MDBS shall be adjudicated in Tippecanoe County, Indiana under Indiana law. Ex. 94 (at Ex. B and Ex. C, para. 9).

## B. BACKGROUND

MDBS and State Bank have stipulated to a number of facts and exhibits in this case as reflected in their pre-trial order and joint stipulation of exhibits presented to the court before trial. (See Stipulation to Admission of Exhibits and Pre-Trial Order).

MDBS, a citizen of the United States, created and wrote the MDBS Database Management System, which is an original computer software program (hereinafter referred to as the "MDBS Software"). The MDBS Software contains a large amount of material wholly original with MDBS, and is copyrightable subject matter under the laws of the United States, and is copyrighted.

MDBS has complied in all respects with the Copyright Act of July 30, 1947 (c. 391, 61 Stat. 652; 17 U.S.C. §§ 101 *et seq.*— hereinafter referred to as "the Act") and all other laws governing copyright, and secured the exclusive rights and privileges in and to the copyright of said MDBS

Software, and received from the Register of Copyrights Certificates of Copyright Registration. On December 26, 1979, MDBS registered the first version of its Software with the Copyright Office, registration no. TX387–711. On June 6, 1985, MDBS registered another version of the MDBS Software (known as MDBS III) with the Copyright Office, registration no. TXU201–290. On July 3, 1997, MDBS registered the MDBS IV version of the MDBS Software with the Copyright Office, registration nos. TX4–469–613 and TX4–560–929. The copies of certificates of those registrations attached as *Exhibit "A"* to Plaintiff's First Amended Complaint are true and accurate and admissible.

At all times pertinent hereto, said MDBS Software has been published by Plaintiff, and all copies and reproductions of it made by Plaintiff or under its authority or license have been printed, bound, published and otherwise reproduced in conformity with the provisions of the Act and all other laws governing copyright.

At all times pertinent hereto, Plaintiff has been and still is the sole and exclusive proprietor of all rights, title, and interest in and to the copyright in said MDBS Software. Plaintiff has at no time transferred ownership of, parted with title to, or divested itself of the exclusive right to vend such copyrighted MDBS Software.

State Bank of India (hereinafter "State Bank") has used, duplicated and distributed MDBS Software that is incorporated into and/or used in conjunction with banking software applications that are deployed in State Bank's banking operations; to wit, IBSnet.

In March of 1998, State Bank and MDBS entered into an End User License Agreement for MDBS IV serial number 34003457. The copy of the 1998 MDBS IV End User License Agreement attached as

*Exhibit "B"* to Plaintiff's First Amended Complaint is true and accurate and admissible.

Also in March of 1998, State Bank and MDBS entered into a second contract, an MDBS IV Runtime Distribution License Agreement for serial number 34003457. The copy of the 1998 MDBS IV Runtime Distribution Agreement attached as *Exhibit "C"* to Plaintiff's First Amended Complaint is true, accurate and admissible.

The MDBS IV Runtime Distribution License Agreement permitted State Bank to copy and distribute specified runtime modules of MDBS IV software under certain conditions for specified environments and purposes, subject to contract terms and conditions. The contract obligated State Bank, prior to distributing MDBS software, to purchase appropriate "tokens" from MDBS and attach the tokens to the software to be distributed. The tokens are integral to the authorization process for distribution of MDBS computer code and contribute to a tracking system which allows MDBS to monitor and control the copying, distribution and use of its software.

Under the MDBS IV Runtime Distribution License Agreement, State Bank agreed to maintain, and make available, those records necessary for MDBS to verify State Bank's compliance with the contract. State Bank also agreed to submit to MDBS calendar quarterly reports, accounting for all of State Bank's distributions of MDBS software and State Bank's purchases of tokens. Furthermore, under the MDBS IV Runtime Distribution License Agreement, State Bank agreed to provide good faith cooperation and best efforts to assist MDBS in enforcing MDBS' rights.

All foundational information referenced in MDBS' damage spreadsheet, as provided to State Bank on September 20, 2001 and previous dates, is admitted as true and accurate without need for record proof. The parties also stipulated to the admission of 108 joint exhibits. (See Stipulation of Exhibits).

Plaintiff MDBS licenses database management software to power sophisticated, data-intensive software programs.

The MDBS software is licensed in parts called "modules." MDBS charges a royalty for each copy of each MDBS module. MDBS customers typically agree to track and account for the shipment of MDBS modules by prepurchasing module-specific "tokens" (which resemble postage stamps) for each copy of each module.

Beginning in the early 1990's, State Bank installed MDBS software in more than 130 State Bank offices around the world. State Bank installed MDBS software to drive a third-party banking program known as IBSnet.

A firm known as Morgan Laboratories created IBSnet and sold it to State Bank through an intermediary Irish firm known as Kindle Banking Systems. In 1991, State Bank signed the first of several agreements with Kindle for IBSnet. Ex. 23. There is no evidence that State Bank ever signed any agreement directly with Morgan, and there is no evidence that MDBS ever signed any agreement with Kindle.

In May 1991, Morgan and MDBS entered into a software distribution agreement, and on December 31, 1991, Morgan and MDBS supplemented their distribution agreement with an Amendment that permitted the installation of two MDBS modules known as DMS and RCV for IBSnet installations in "branches of the State Bank of India located within the geographical land boundaries of the country of India." Morgan never licensed any modules other than DMS and RCV from MDBS for State Bank. Ex. 2. State Bank was not a

party to the Morgan MDBS agreement. Ex. 1, 2.

In 1996, MDBS and Morgan sued each other. As part of their settlement, Morgan and MDBS expressly terminated their distribution agreement, including the contract amendment between Morgan and MDBS that authorized distributions of DMS and RCV modules for IBSnet installations in India. The settlement had an effective date of June 18, 1997. Ex. 18. Because of the termination of the MDBS Morgan license agreement, Morgan announced to State Bank that it could no longer distribute MDBS software to State Bank. On July 22, 1997, Morgan sent State Bank a letter that stated:

> Morgan Labs has recently ceased its relationship with MDBS preventing us from distributing any further MDBS software modules (including the database engine). Thus, any software that runs on such modules (such as IBSnet Classic, ISP and Remote Site) unfortunately cannot be licensed, distributed, or implemented, effective as of 18 June 1997, as it assumes the existence of those MDBS modules. Understandably, you may have questions about how this affects your site planning going forward; therefore, we suggest you discuss your situation with your account representative at Kindle Banking Systems.

Ex. 20. According to MDBS trial witness David Cicardo, MDBS concurred with Morgan regarding the effect of the MDBS Morgan termination on State Bank's rights.

As instructed by Morgan, State Bank consulted Kindle Banking Systems for help. In a series of exchanges of letters, Kindle confirmed Morgan's message: State Bank could no longer acquire MDBS licenses through Morgan. "As is clear from the letter of 22nd July 1997 Morgan Laboratories, from which Kindle sources its supplies, is no longer able to provide MDBS licenses." Ex. 23. Therefore, Kindle instructed State Bank to acquire MDBS licenses directly from MDBS: "The solution to your problem is to ... purchase the MDBS licenses required directly from MDBS Inc." Ex. 25. Kindle eventually agreed to help State Bank finance the purchase of those MDBS licenses. Ex. 29, 31–32.[1]

Based on these express notices from Morgan and Kindle, State Bank therefore decided to enter into new license agreements with MDBS for installations of IBSnet. On March 31, 1998, State Bank finally signed an MDBS IV End User License Agreement and an MDBS IV Runtime Distribution License Agreement and placed an initial order for tokens. Ex. 47, 49–50, 53–55, 94. MDBS explained to Kindle and State Bank that State Bank, as an MDBS licensee, would itself be obligated to comply with the MDBS token system for licensing of all software modules. Ex. 34–39.

State Bank contends that its obligation to purchase and use tokens under its March 31, 1998 distribution license with MDBS should only apply to State Bank's

---

**1.** At trial, State Bank vaguely implied that perhaps Kindle itself had licensed MDBS software to State Bank, but the documents in evidence clearly show that Kindle repeatedly told State Bank just the opposite: Kindle could not license MDBS software to State Bank, and State Bank therefore needed to make its own arrangement to license MDBS software. Ex. 23, 25. State Bank also implied that Kindle itself should be responsible for payment to MDBS for the royalties proved by MDBS at trial. Indeed, State Bank has apparently threatened to seek indemnity from Kindle for State Bank's liability to MDBS. Ex. 27. However, State Bank has not pled Kindle into this case as a third-party defendant, so this Court makes no finding regarding the nature or extent of any indemnity obligation from Kindle to State Bank.

branches outside of India. The contract does not support this contention. On its face, the March 31, 1998 distribution license applies to all of the "State Bank of India," as "Licensee," and there are no territorial exceptions or limitations to the scope of the license. Ex. 94 (at Ex. C). As confirmed by MDBS witness Cicardo at trial, MDBS intended that the March 31, 1998 license would apply to all of State Bank's uses, duplications and distributions of MDBS software modules, both within and outside of India.

There is no evidence that State Bank ever asked MDBS to permit State Bank to rely upon the 1991 Morgan MDBS contract amendment (Ex. 2) after Morgan and MDBS terminated their relationship. If State Bank had intended for Exhibit 2 to be a source of continuing license rights for State Bank, then the March 31, 1998 contract should have so stated, but the contract does not do so. Moreover, the contract is integrated, so State Bank cannot point to the 1991 Morgan MDBS contract or any other collateral evidence of the deal between MDBS and State Bank. Ex. 94 (at Ex. C, § 9).

Under the March 31, 1998 agreement, State Bank agreed to account for all MDBS modules. State Bank's failure to comply with MDBS inquiries about State Bank's license compliance led to the filing of this lawsuit. Ex. 74, 85.

## II. CONCLUSIONS OF LAW

### A. COPYRIGHT INFRINGEMENT

As set forth above, the parties have stipulated and the court now concludes that the MDBS software at issue in this case is copyrighted. Despite State Bank's technical compliance with Rule 12(h)(1), the court finds that based upon its conduct in this case it has waived its argument with respect to this court's personal jurisdiction over it with respect to the copyright claims. See *Continental Bank, N.A.*

*v. Meyer*, 10 F.3d 1293, 1296–97 (7th Cir. 1993). As demonstrated in *Continental Bank* a party may waive its objection jurisdiction over the person by its conduct during the litigation. *Id.* at 1297. Here State Bank actively participated in the discovery process as to all claims. Further, State Bank failed to raise this issue through the proper means (i.e. a Rule 12(b)(2) motion) to ensure a quick and immediate resolution to the personal jurisdictional question; but rather waited almost nine months until the submission of its post-trial brief to raise the issue. The Seventh Circuit has found that this type of conduct does not comport with the spirit and meaning of Rule 12(h) in expediting and simplifying the issues before a Federal Court. See *Continental Bank, N.A.*, 10 F.3d at 1297. The court is extremely displeased with this type of tactic on the part of counsel for State Bank; and strongly urges counsel not to partake in this type of dilatory tactic in the future. Therefore, State Bank is liable for copyright infringement for any unlicensed use, duplication or distribution of the copyrighted MDBS software within the United States. 17 U.S.C. § 501.

However, that being said, the court concludes that any copyright infringement claims that arose outside of the United States must fail as a matter of law. It is well established that the copyright laws of the United States generally do not have extraterritorial effect. See *Subafilms, Ltd. v. MGM–Pathe Communications*, 24 F.3d 1088, 1095–96 (9th Cir.1994) (en banc); *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1100–01 (2d Cir.), *cert. denied*, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976); *Fun Damental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 WL 724734, 41 U.S.P.Q.2d 1427 (S.D.N.Y.1996); *De Bardossy v. Puski*, 763 F.Supp. 1239,

1243–45 (S.D.N.Y.1991); *Ahbez v. Edwin H. Morris & Co.*, 548 F.Supp. 664, 667 (S.D.N.Y.1982). Thus MDBS's claim for damages based upon State Bank's failure to properly use MDBS's various modules pursuant to a valid license outside of the United States or its territories prior to March 31, 1998 is without merit.[2]

## B. BREACH OF CONTRACT

As set forth above, the parties have also stipulated that State Bank's March 1998 license agreement with MDBS obligated State Bank, prior to distributing MDBS software, to purchase appropriate tokens from MDBS and attach the tokens to the software to be distributed. "Tokens serve as a metering device, since MDBS otherwise can't tell how many copies of the software" a licensee such as State Bank has distributed. *Micro Data Base Systems, Inc. v. Nellcor Puritan Bennett, Inc.*, 165 F.3d 1154 (7th Cir.1999). State Bank is in breach of contract to the extent of its failure to prepurchase and use the required tokens for each of State Bank's installations of specified MDBS software modules. State Bank has not contested the validity or enforceability of the March 31, 1998 distribution license agreement or any of its provisions. State Bank failed to comply with that contract's requirement for payment to MDBS of distribution royalties in the form of prepurchased tokens per module.

■ State Bank raises an argument that MDBS failed to license all the modules necessary to run the IBSnet software and as such MDBS should not now recover for any alleged failure by State Bank to purchase the requisite licenses from MDBS. However, the court finds that State Bank's reliance on Indiana Code § 26–1–2–315 (U.C.C. § 2 315) unpersuasive. First this argument was not raised or fully developed at or before the bench trial. Section 2–315 is a highly factual inquiry. See *Woodruff v. Clark County Farm Bureau Coop. Assoc.*, 286 N.E.2d 188, 199, 153 Ind.App. 31 (Ind.Ct.App. 1972). State Bank's veiled and stealthy attempts to present this issue during the bench trial (without fully notifying either MDBS or the court that its questions were based upon U.C.C. 2–315) are insufficient to fully and fairly develop this factual inquiry before the court.

Furthermore, in utilizing an implied warranty as an affirmative defense (which is essentially what State Bank is seeking to do), a party must plead the implied warranty with particularity and then prove its existence by a preponderance of the evidence. *Marks v. Bremmer*, 116 N.E. 738 186 Ind. 434,(Ind.1917); *Comark Merchandising, Inc. v. Highland Group, Inc.*, 932 F.2d 1196,1202–03 (7th Cir.1991) (applying Illinois law). This State Bank has not done. A careful examination of both State Bank's initial answer on April 19, 2000 and its answer to MDBS's amended complaint on February 13, 2001 reveals no such affirmative defense.

■ Next, State Bank contends that its March 31, 1998 distribution license agreement with MDBS only applies to State Bank's international installations of MDBS software and has no application to State Bank's installations of MDBS software within India. In fact, the distribution license is not geographically restricted. The first sentence of our license identifies the "Licensee" as "State Bank of India," without limitation. The license agreement

---

**2.** The basis of the court's conclusion with respect to the infringement claim is that a majority of the unauthorized use was undertaken outside of the United States. However, a careful examination of exhibit 101 demonstrates that an unauthorized use of two modules took place at State Bank's New York office. Therefore, recovery for damages pursuant to the copyright claim can be had with respect to this office only.

in no way exempts State Bank from license compliance for State Bank's use, duplication and distribution of MDBS software within India. Therefore, the court concludes that State Bank is liable for all MDBS modules that State Bank has used, duplicated or distributed without proper MDBS tokens affixed pursuant to the March 1998 agreement.

## C. DAMAGE ANALYSIS

■ On May 26, 2001, in response to this court's order compelling discovery, State Bank disclosed extensive tokenless installations of MDBS modules, which are reproduced in the customer list below. Ex. 97, 101. MDBS and State Bank then cooperated in an examination of the MDBS modules present at those installations. See Ex. 101, 103. Pursuant to the findings above the court has entered the numeral (1) to identify each violation by State Bank of the March 1998 agreement as well as the two copyright infringement violations within the United States prior to that 1998 agreement.

| CUSTOMER | Address 2 | DATE | LAN DMS | LAN RTL | SU DMS | SU RTL | SU IDML | SU DBRS |
|---|---|---|---|---|---|---|---|---|
| Backbay Reclamation | Hariman Pojiet, Mumbai | 02/01/92 | | | | | | |
| Industrial Finance Branch | Pune | 03/01/93 | | | | | | |
| CAG Branch (Mumbai) | Mumbai | 10/01/93 | | | | | | |
| Commercial Branch | Chennai | 04/01/94 | | | | | | |
| Industrial Finance Branch | Bangalore | 08/01/94 | | | | | | |
| Leather International Branch | Chennai | 11/01/94 | | | | | | |
| Industrial Finance Branch | Vadodara | 12/01/94 | | | | | | |
| Overseas Branch | New Delhi | 07/01/95 | | | | | | |
| Overseas Branch | Hyberabad | 08/01/95 | | | | | | |
| Industrial Finance Branch | Calcutta | 09/01/95 | | | | | | |
| Hazira | Gujarat | 10/01/95 | | | | | | |
| Overseas Branch | Bangalore | 10/01/95 | | | | | | |
| Ihal Branch | Bangalore | 11/01/95 | | | | | | |
| Industrial Finance Branch | Chandigarh | 01/01/96 | | | | | | |
| Overseas Branch | Punjab | 01/01/96 | | | | | | |
| Small Industries Branch | Hyberabad | 02/01/96 | | | | | | |
| Commercial Branch | Ahmedabad | 04/01/96 | | | | | | |
| Race Coarse Road Branch | Bangalore | 05/01/96 | | | | | | |
| Industrial Finance Branch | New Delhi | 06/01/96 | | | | | | |
| Industrial Finance Branch | Indore | 07/01/96 | | | | | | |
| SSI Mdhali | Punjab | 07/01/96 | | | | | | |
| Bangalore City | Bangalore | 08/01/96 | | | | | | |
| Electric City | Bangalore | 08/01/96 | | | | | | |
| ISRO Branch | Bangalore | 08/01/96 | | | | | | |
| Industrial Estate Branch | Chandigarh | 08/01/96 | | | | | | |
| Sector 34 Branch | Chandigarh | 08/01/96 | | | | | | |
| Focal Point Branch | Luddhiana | 08/01/96 | | | | | | |
| Dewas Branch | Dewas, MP | 10/01/96 | | | | | | |

| | | |
|---|---|---|
| Industrial Finance Branch | Shopal | 10/01/96 |
| S.S.I. Branch | Haryana | 10/01/96 |
| Hingna Industrial Estate Branch | Nagpur | 01/01/97 |
| CAG Branch (Delhi) | New Delhi | 03/01/97 |
| Industrial Finance Branch | Hyberabad | 03/01/97 |
| Industrial Finance Branch | Mumbai | 03/01/97 |
| CAG Branch (Calcutta) | Kolkata | 04/01/97 |
| Parwanoo Himachal | Pardesh | 04/01/97 |
| Overseas Branch | Varanasi | 04/01/97 |
| CAG Branch (Cheinaj) | Chennai | 05/01/97 |
| Industrial Area Branch | Jalandhar | 05/01/97 |
| Overseas Branch | Andhra Pradesh | 05/01/97 |
| Yellareddyguda Branch | Hyberabad | 05/01/97 |
| Howrah Branch | West Bengal | 06/01/97 |
| Overseas Branch | Ahmedabad | 07/01/97 |
| Jalahalli Branch | Bangalore | 07/01/97 |
| Chandrayanigutta Branch | Hyderabad | 07/01/97 |
| Hal Campus | Hyderabad | 07/01/97 |
| Overseas BR Kanpur | Kanpur | 07/01/97 |
| IFB Saki Naka Branch | Muzzbai | 07/01/97 |
| SPL Commercial Branch | Harvana | 08/01/97 |
| SSI Bhowanrler | Calcutta | 09/01/97 |
| Balanagar Branch | Hyderabad | 09/01/97 |
| Maharajpur | Ghaziabad(UP) | 10/01/97 |
| Overseas Branch Colaba, | Mumbai | 10/01/97 |
| Industrial Finance Branch | Mumbai | 10/01/97 |
| Industrial Finance Branch | Mumbai | 10/01/97 |
| Laghu Udyog Branch | Ahmedabad | 11/01/97 |
| Industrial Finance Branch | Madhya Pradesh | 11/01/97 |
| Industrial Finance Branch | Mumbai | 11/01/97 |
| Medical Institute Branch | Chandigarh Q.T. | 12/01/97 |
| Industrial Finance Branch | Walajapet | 12/01/97 |
| Bangalore Branch | Bangalore | 01/01/98 |
| SPL Commercial Branch | Punjab | 01/01/98 |
| Secunderabad Branch | Secunderabad | 01/01/98 |
| New Delhi Mun SR | New Delhi | 02/01/98 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| EOIL | Hyderabad | 02/01/98 | | | | | | |
| Indian INST. Of Science Branch | Bangalore | 03/01/98 | | | | | | |
| S.C.B. Karnal Branch | Karnal | 04/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| SPL Commercial Branch | Punjab | 05/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Industrial Estate Branch | Rajajinagar, Bangalore | 06/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Overseas Branch | Cochin | 07/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Overseas Branch | Moradabad (UP) | 07/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| SPL Commercial Branch | Hissar | 07/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| SPL Commercial Branch | Ludhlana | 07/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Brubahesiar | 08/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Nehru Place Branch | New Delhi | 09/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Mumbai | 11/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Chanoni Chowk Branch | Delhi | 11/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Special Commercial Branch | Jalandhar | 12/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Special Commercial Branch | Ludhlana | 12/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Oxhla Industrial Estate Branch | New Delhi | 12/01/98 | 1 | 1 | 1 | 1 | 1 | 1 |
| Jaipur Main Branch | Jaipur | 01/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Jodhpur Branch | Jodhpur | 01/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| South Extension, Pari 1 | New Delhi | 01/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Vishakapatnam Branch | Andhra Pradesh | 01/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| BHPV Branch | Andhra Pradesh | 01/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Industrial Finance Branch | Madhya Pradesh | 01/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Rourkela | 02/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Overseas Branch | Chennai | 03/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Ring Road Branch | New Delhi | 03/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Friends Colony Branch | New Delhi | 03/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Najafgarh Road Branch | New Delhi | 03/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Narawa Commercial Branch | New Delhi | 03/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Hari Market Branch | Jamaiu Kashmir | 04/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Hyderabad | 04/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Dia...... Branch | Girgaum.Mumbai | 04/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Guindy Branch | Ghennai | 05/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Rajajinagar, Bangalore | 07/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Overseas Branch | Tirupu | 07/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Secunderabad | 08/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Steel Project Branch | Andhra Pradesh | 08/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| High Tech City Branch | Madhapur (AP) | 08/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| SPL Commercial Branch | Ahmedabad | 08/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| NAI Branch | Bangalore | 08/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Industrial Finance Branch | Coijbatore | 09/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Settipalli (Tirupat) Branch | Tirupati | 09/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| SSI Govindpura Branch | Bhopal (AP) | 09/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Kandivile Branch | Mumbai | 10/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Chandigarh Main Branch | Chandigrah | 11/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Industrial Finance Branch | Pune | 11/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| International Services Branch | Mumbai | 11/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Industrial Finance Branch | Chennai | 12/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| SSI Kumara Park Branch | Bangalore | 12/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Ajman Khan Road Branch | New Delhi | 12/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Industrial Estate Branch | Delhi | 12/01/99 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Mumbai | 04/01/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Noida Branch | Ghaziabad(UP) | 04/01/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| MBDG (Andheri) Branch | Mumbai | 04/01/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Industrial Estate Branch | Maharashtra | 05/01/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Bangalore | 05/02/00 | 1 | · | 1 | 1 | 1 | 1 |
| Commercial Branch | Kolkata | 05/06/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Misore | 06/23/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Mumbai | 07/19/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Amritsar Main Branch | Amritsar (PB) | 10/17/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Madurai | 10/18/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Hubej | 11/23/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Jaipur | 12/03/00 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Cochin | 02/05/01 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Mangalore | 02/24/01 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commercial Branch | Belgaum | 02/27/01 | 1 | 1 | 1 | 1 | 1 | 1 |
| Rajpura Branch | Rajpura (FB) | 04/01/01 | 1 | 1 | 1 | 1 | 1 | 1 |
| | Distributions without Tokens within India | | | | | 64 | 64 | 64 |

| | | |
|---|---|---|
| State Bank Frankfurt | | 05/01/95 |
| State Bank Antwerp | | 05/01/95 |
| State Bank Paris | | 05/01/95 |
| SEBEL London | | 05/01/95 |

| | | | | |
|---|---|---|---|---|
| State Bank Tokyo | 05/01/95 | | | |
| State Bank Osak | 05/01/95 | | | |
| State Bank Hong Kong | 05/01/95 | | | |
| State Bank Singapore | 03/01/96 | | | |
| State Bank DTSB New York | 05/01/95 | | 1 | 1 |
| State Bank London Main Branch | 05/01/95 | | | |
| State Bank Johannesburg | 1996 | | | |
| State Bank Toronto | 05/01/98 | 1 | 1 | 1 | 1 |
| State Bank Chicago | 06/01/98 | 1 | 1 | 1 | 1 |
| State Bank Los Angeles | 06/01/99 | 1 | 1 | 1 | 1 |
| State Bank Male | 10/01/00 | 1 | 1 | 1 | 1 |
| Indo Nigerian Bank Nigeria | 09/01/00 | 1 | 1 | 1 | 1 |
| State Bank Colombo FCBU | 09/01/00 | 1 | 1 | 1 | 1 |
| State Bank Colombo DBU | 09/01/00 | 1 | 1 | 1 | 1 |
| | Distributions without Tokens outside India | 7 | 8 | 8 |
| | Total Distributions without Tokens | 71 | 72 | 72 |

Ex.101. The foundation information set forth in this table has been stipulated by the parties and entered by the court as part of the Pretrial Order.

The damages recoverable by MDBS from State Bank are determined by multiplying the number of unauthorized uses of the various modules by the cost of that particular module.

The MDBS modules that State Bank distributed without tokens are known by the technical names LAN DMS, LAN RTL, SU DMS, SU RTL, SU IDML and SU DBRS. Based upon the above conclusions of law the court has determined that State Bank has distributed at least 414 MDBS modules without tokens in contravention of State Bank's express agreement with MDBS or in violation of the copyright act as reflected by the court's modification to Ex. 101.

Distributions without Runtime Tokens

| | LAN DMS | LAN RTL | SU DMS | SU RTL | SU IDML | SU DBRS |
|---|---|---|---|---|---|---|
| 1992 | | | | | | |
| 1993 | | | | | | |
| 1994 | | | | | | |
| 1995 | | | | | 1 | 1 |
| 1996 | | | | | | |
| 1997 | | | | | | |
| 1998 | 14 | 14 | 16 | 16 | 16 | 16 |
| 1999 | 34 | 34 | 35 | 35 | 35 | 35 |
| 2000 | 12 | 12 | 16 | 16 | 16 | 16 |
| 2001 | 4 | 4 | 4 | 4 | 4 | ·4 |
| Total Count | 64 | 64 | 71 | 71 | 72 | 72 |

The actual list price charged by MDBS for distribution tokens represents a reasonable unit price for calculation of royalty damages recoverable by MDBS. State Bank submitted no evidence to the contrary. State Bank's March 31, 1998 contract with MDBS expressly obligates State Bank to recognize those list prices, and the 1998 prices remain in effect today.

The parties have stipulated that the actual list prices for those tokens for the years in question are as follows:

Runtime Price per Module

|  | LAN DMS | LAN RTL | SU DMS | SU RTL | SU IDML | SU DBRS |
|---|---|---|---|---|---|---|
| 1992 | $ 450 | $ 345 | $ 250 | $190 | $125 | $150 |
| 1993 | $ 450 | $ 345 | $ 250 | $190 | $125 | $150 |
| 1994 | $ 550 | $ 370 | $ 275 | $200 | $140 | $140 |
| 1995 | $2,000 | $1,450 | $1,000 | $725 | $500 | $500 |
| 1996 | $2,000 | $1,450 | $1,000 | $725 | $500 | $500 |
| 1997 | $2,000 | $1,450 | $1,000 | $725 | $500 | $500 |
| 1998 | $2,000 | $1,450 | $1,000 | $725 | $500 | $500 |
| 1999 | $2,000 | $1,450 | $1,000 | $725 | $500 | $500 |
| 2000 | $2,000 | $1,450 | $1,000 | $725 | $500 | $500 |
| 2001 | $2,000 | $1,450 | $1,000 | $725 | $500 | $500 |

Ex. 101. The accuracy of this table has been stipulated by the parties and entered by the Court in the Pretrial Order.

Applying this price list to the court's modified table of tokenless modules set forth above yields the following principal royalty amounts due by module and year:

| Amounts Due | LAN DMS | LAN RTL | SU DMS | SU RTL | SU IDML | SU DBRS |
|---|---|---|---|---|---|---|
| 1992 | 0 | 0 | 0 | 0 | 0 | 0 |
| 1993 | 0 | 0 | 0 | 0 | 0 | 0 |
| 1994 | 0 | 0 | 0 | 0 | 0 | 0 |
| 1995 | 0 | 0 | 0 | 0 | $ 500 | $ 500 |
| 1996 | 0 | 0 | 0 | 0 | 0 | 0 |
| 1997 | 0 | 0 | 0 | 0 | 0 | 0 |
| 1998 | $28,000 | $20,300 | $16,000 | $11,600 | $ 8,000 | $ 8,000 |
| 1999 | $68,000 | $49,300 | $35,000 | $25,375 | $17,500 | $17,500 |
| 2000 | $24,000 | $17,400 | $16,000 | $11,600 | $ 8,000 | $ 8,000 |
| 2001 | $ 8,000 | $ 5,800 | $ 4,000 | $ 2,900 | $ 2,000 | $ 2,000 |

Ex. 101.

The total principal amount of unpaid royalties is $447,000, with interest at 8.0% (compounded annually) totaling $66,409, as follows:

|  | Principal Due for Year | Principal Due to Date | Interest Due for Year 8.00% | Interest Due to Date | Total Due to Date |
|---|---|---|---|---|---|
| 1995 | 1,000 | 1,000 |  | 0 | 1000 |
| 1996 | 0 | 1,000 | 80 | 80 | 1,080 |
| 1997 | 0 | 1,000 | 86 | 166 | 1,166 |
| 1998 | 91,900 | 92,000 | 93 | 259 | 92,259 |
| 1999 | 212,675 | 304,675 | 7,381 | 7,640 | 312,315 |

| 2000 | 85,000 | 389,675 | 24,985 | 32,625 | 422,300 |
| 2001 | 24,700 | 447,000 | 33,784 | 66,409 | 513,409 |

Ex. 101.

## D. PREJUDGMENT INTEREST

Prejudgment interest is part of the award of the compensation necessary to make the plaintiff whole. *Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 591 (7th Cir.1994). Money has time value, and prejudgment interest is therefore necessary in a case such as this one to compensate the plaintiff fully for the losses it has suffered, because those losses were not compensated timely. *Partington v. Broyhill Furniture Ind., Inc.*, 999 F.2d 269, 274 (7th Cir.1993). "According to the Indiana courts, the policy behind an award of prejudgment interest is premised upon the theory 'that there has been a deprivation of the use of money or its equivalent and that unless interest is added the injured party can not be fully compensated for the loss suffered. Interest is recoverable not as *interest* but as additional damages to accomplish full compensation.'" *Travelers Ins. Co. v. Transport Ins. Co.*, 846 F.2d 1048, 1052 (7th Cir.1988), *quoting Indiana Ins. Co. v. Sentry Ins. Co.*, 437 N.E.2d 1381, 1391 (Ind. App.1982). For these reasons, an award of prejudgment interest is necessary in this case to make MDBS whole.

■■ "[S]tate law applies to an award of prejudgment interest in diversity suits" such as this one. *Travelers Ins. Co. v. Transport Ins. Co.*, 846 F.2d at 1053. Under Indiana law, prejudgment interest is proper when damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time damages accrue. *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 607 (7th Cir.1985); *Public Service Co. of Indiana, Inc. v. Bath Iron Works Corp.*, 773 F.2d 783, 796 (7th Cir.1985). Prejudgment interest is proper even where the fact finder has exercised some degree of judgment in measuring damages. *Simmons*, 762 F.2d at 607. Damages do not have to be liquidated, but only ascertainable as of a particular time according to known standards of value. *Public Service Co.*, 773 F.2d at 796. Damages are ascertainable where measurement is a matter of mathematical computation. *Firstmark Standard Life Ins. Co. v. Goss*, 699 N.E.2d 689, 693 (Ind.App. 1998); *Hooker Builders, Inc. v. Smalley*, 691 N.E.2d 1256, 1258 (Ind.App.1998); *D & G Stout, Inc. v. Bacardi Imports, Inc.*, 805 F.Supp. 1434, 1453 (N.D.Ind.1992).

Where the above-listed circumstances are present, the award of prejudgment interest is mandatory, not discretionary. *Dale Bland Trucking, Inc. v. Kiger*, 598 N.E.2d 1103, 1106 (Ind.App.1992); *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 876 (Ind.App. 1991); *Erie–Haven, Inc. v. Tippmann Refrigeration Const.*, 486 N.E.2d 646 (Ind. App.1985).

■ Because prejudgment interest is part of the compensation to MDBS under a state law contract theory, the Indiana measure of prejudgment interest must be used. (To the extent that *Schimizzi v. Illinois Farmers Ins. Co.*, 928 F.Supp. 760, 788 (N.D.Ind.1996) is contrary, that decision is erroneous, and should be disregarded. *See Travelers Ins. Co. v. Transport Ins. Co.*, 846 F.2d at 1051.) Typically, Indiana courts apply a prejudgment interest rate of 8% in a contract case, pursuant to Indiana Code 24–4.6–1–103. *See, e.g., Sand Creek Country Club*, 582 N.E.2d at 876.

■ Prejudgment interest is computed from the time the principal amount was

due. *Sand Creek Country Club,* 582 N.E.2d at 876; *see Hizer v. GMC, Allison Gas Turbine Div.,* 888 F.Supp. 1453, 1462 (S.D.Ind.1995). Where, as here, the damages are in the nature of intellectual property infringement damages, the damages are reasonably calculated from the date of the infringing activity. *Grain Processing Corp. v. American Maize–Products Co.,* 893 F.Supp. 1386, 1396, (N.D.Ind.1995) *aff'd in part, vacated in part,* 108 F.3d 1392 (Fed.Cir.1997); *Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.,* 892 F.Supp. 1123, 1132 (S.D.Ind. 1995), *aff'd,* 122 F.3d 1040 (Fed.Cir.1997).

As set forth in the table above, the court has calculated prejudgment interest on a per-module basis at the rate of 8.0%, compounded annually, dating from each year in which State Bank should have paid royalties for particular installations of MDBS software modules. The total amount of prejudgment interest awarded to MDBS is $66,409.

### III. CONCLUSION

As explained above Damages are awarded to the Plaintiff, MDBS, in the amount of $447,000 plus pre-judgment interest of $66,409. Each party to bear its own costs. *IT IS SO ORDERED.*